April 2, 2018

Via: CM/ECF

The Honorable Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 920
New York, New York 10007

    Re:    Gardiner Anderson v. Outhouse PR, LLC; Case No. 1:17-cv-6722(LTS)(BCM)
            Fed. R. Civ. P. 11(c)(3) Sanctions

Dear Judge Moses:

    I write on behalf of Defendant Outhouse PR LLC to address certain deficiencies in Plaintiff's March 30, 2018 Show Cause letter ("Letter"). ECF No. 23. Plaintiff made false statements to the Court in his Letter and to the undersigned during settlement discussions last week. Plaintiff also made misrepresentations in his Letter and made a material omission during a recent settlement discussion. I certify my statements of fact under penalty of perjury.

1. <u>Plaintiff made a false claim in his Letter about his Initial Disclosures</u>

    Plaintiff's Letter states that "Plaintiff's counsel only recently found out that Initial Disclosures were never received and, possibly, not sent by her law firm," and that the omission "has only recently been brought to her attention." Counsel blames her failure to serve Plaintiff's Initial Disclosures on her substitution[1] of counsel just before the Initial Pretrial Conference that was held on December 18, 2017.[2]

    Contrary to Plaintiff's statement, I wrote an email to Plaintiff on January 20, 2018, asking: "I don't seem to have your client's Initial Disclosures. Can you please provide the date that you sent them?" This email is attached as Exhibit A. I did not receive a response to my email. Plaintiff also received notice on March 15 that he had not yet sent his Initial Disclosures when I sent Plaintiff the draft Joint Status Letter that raised this issue. Plaintiff still did not serve his Initial Disclosures. No, Plaintiff did not see fit to serve his Initial Disclosures until March 29 when settlement discussions failed and Plaintiff was facing Your Honor's Order to Show Cause.

    Plaintiff's Letter also presents the feeble excuse that "[t]he office error was further amplified by the fact that parties did not agree to email courtesy copies until later in the discovery process, making it difficult to verify whether the Initial Disclosure [sic] were never received or never sent." Plaintiff deflects because "courtesy copies" are not relevant to proper service under Rule 5.

---

[1] Plaintiff's counsel's substitution at the conference was improper because Ms. Tsyvkin did not sign the Pre-Conference Statement.
[2] Plaintiff's date is incorrect. The Rule 16 conference was held on December 18, 2017.

Plaintiff should explain what is meant by "difficult to verify." Plaintiff could have reached out to Defendant to verify. Plaintiff could have reviewed in two minutes the few emails that have been exchanged between the parties in this action to assess the status of e-service. In fact, on January 5, 2018 I sent Plaintiff an email with the subject line: "Form of Service of Discovery." The email asked Plaintiff: "[d]oes your client accept service of discovery papers via email as per FRCP 5(b)(2)(E), or do I also need to send them physically?" Since I did not receive a response to my email I timely mailed Defendant's Initial Disclosures on January 5, 2018, and expected Plaintiff to do the same. Plaintiff's excuse about "courtesy copies" rings hollow. Defendant's January 5, 2018 email is attached as Exhibit B.

Plaintiff claims that the "office error" was "harmless" because "[n]othing contained in the Initial Disclosures was unknown to the Defendant, including the computation of damages and persons with potential information regarding the case." ECF No. 23, p. 2. Nothing could be further from the truth. Plaintiff's Initial Disclosures name the person who apparently is responsible for registering the copyright of the subject photograph. Plaintiff had not previously provided this information to Defendant and discovery closes in three weeks. Registration could not be more important in copyright infringement actions because it goes to the heart of subject matter jurisdiction.

Plaintiff's failure to serve his Initial Disclosures until faced with sanctions – and lying about it to the Court – was neither "substantially justified" nor "harmless," and he should be sanctioned.

2. Plaintiff violated the Court's Initial Case Management and Scheduling Order by refusing to meet and confer by February 28, 2018

Plaintiff refused to meet and confer with Defendant by February 28, 2018 pursuant to the Court's Initial Case Management and Scheduling Order. ECF No. 19. I emailed Ms. Tsyvkin three times to arrange a date to meet and confer – on February 9, February 13, and March 2. She did not reply to my emails until March 5 and provided no reason for her silence. We held the conference by telephone on March 13, 2018. The emails are attached as Exhibit C.

3. Plaintiff made a false claim to Defendant during settlement talks

Your Honor's Order to Show Cause ignited Plaintiff's eagerness to settle this case after dragging his feet for a month as explained in paragraph 2 above. Mr. Liebowitz called me thirty minutes after the Order was filed on March 27 to discuss settlement. He asked that Defendant revisit its offer and we arranged a second phone call for March 29.

Mr. Liebowitz knowingly made a false claim during the March 29 phone call. He stated that the photograph at issue was the only photograph that was licensed (meaning published) from a two-day shoot that Plaintiff undertook for the New York Daily News. Since I knew that was not a true statement, to ensure that I heard him correctly, shortly thereafter I asked: "So you say that it was the only photograph that was licensed?" Mr. Liebowitz replied "yes." Contrary to his assertion, six additional photographs from that photoshoot were published by the New York Daily News. Excerpts from the articles that show five additional photographs and their publication dates are attached as Exhibit D. The sixth photograph is in Plaintiff's own complaint! ECF No. 1, Ex. B, p.1/4. Furthermore, the copyright registration that bears Mr. Liebowitz's name

lists six photographs of the subject that were published on the same dates as were the New York Daily News articles. It is inconceivable that Mr. Liebowitz was not aware of the other published photographs when he twice made that statement. Plaintiff's representation that only one photograph was "licensed" was false. The copyright registration is attached as Exhibit E.

Defendant asserts that Mr. Liebowitz made this false claim because he was desperate to establish that Plaintiff received a licensing fee of $500 for the single photograph, which apparently was the fee that the photographer received for the two-day photoshoot. Since seven photographs were published, according to his method of calculating damages the license fee for one photograph drops to $71.43. The invoice that Plaintiff claims was the invoice for the photoshoot is attached as Exhibit F. Defendant surmises that Mr. Leibowitz will not settle for less than $500 because he wishes to recoup the filing fee of this action, and perhaps toss the remaining $100 to his client. The page from Mr. Liebowitz's website that suggests that he paid Plaintiff's filing fee is attached as Exhibit G.

4. Plaintiff made a material omission during the March 29, 2018 telephone call

During the March 29 telephone call Mr. Liebowitz insisted that his client was entitled to the standard editorial licensing fee of $575 that Getty Images charges for a large photograph. Mr. Liebowitz did not reveal, however, that his client does not license his photographs through Getty Images, until I finally asked him. Woe to the *pro se* defendant who is so terrified by an unjustified demand of $20,000 that he does not think to research such things ahead of time.

5. Plaintiff's statement about timely discovery is disingenuous

Plaintiff's Letter claims that "Plaintiff has timely responded to Defendant's discovery requests, including document requests and interrogatories . . . . " This is stretching the facts. Defendant timely mailed its discovery responses on January 18, 2018. At 7:26pm that evening, Plaintiff emailed me, asking for an extension to serve Plaintiff's discovery responses. Technically the request was timely so I consented to the request and received Plaintiff's discovery responses ten days later on January 28, 2018.

6. Plaintiff harassed Defendant by issuing a Notice of Deposition

Plaintiff served a Notice of Deposition[3] on Defendant on March 29, 2018. The purpose of serving this deposition was to harass Defendant and scare it into settling the case prior to the parties' scheduled settlement telephone call the next day. Settlement on March 30 would have allowed Plaintiff to dismiss the case and not have to respond to Your Honor's Order to Show Cause.

Rule 11 sanctions are warranted.

Respectfully Submitted,

---

[3] Defendant will ignore the Notice of Deposition, however, because it states that "plaintiff Neal Clipper" will take the deposition, and the plaintiff in this case is not Neal Clipper. The Notice is attached as Exhibit H.

By: _____

Frances B. Lippincott
Lippincott IP LLC
475 Wall Street
Princeton, New Jersey 08540
Tel: (908) 237-0400
flann@lippincottip.com
*Attorneys for Defendant*
  *Outhouse PR LLC*